AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Southern District of California

FILED

JUL 16 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Facebook User ID "100001111873878"
& Username "Yessica.Martinez.3726"

Case No. 18MJ4022

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, & 963 | Importation and Conspiracy to Import Controlled Substances |

The application is based on these facts:

See attached Affidavit In Support of Search Warrant Application

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Alexander Askey, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/13/18

*Judge's signature*

City and state: San Diego, California

Hon. Jan M. Adler, U.S. Magistrate Judge
*Printed name and title*

1

## Attachment A

2

3  Facebook, Inc. is an Internet Service Provider, with its primary computer

4  information systems and other electronic communications and storage systems,

5  records and data located at Facebook Inc., 1 Hacker Way, Menlo Park, CA 94025.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**ATTACHMENT B**

**I.    Service of Warrant**

The officer executing the warrant shall permit Facebook, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.    "Facebook" Items subject to seizure**

All subscriber and/or user information, all electronic mail, images, GPS tags, text messages, comments, likes, histories, friends/followers lists included individuals following and individuals followed, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and usernames/vanity names for the period identified below:

**"Registration Date" to the present date of warrant execution**:

All records concerning the identity of the user with the Facebook Vanities and/or Facebook Unique Identification (ID) numbers usernames/vanity names, identified as:

1)  Facebook Unique ID -    "100001111873878"

Facebook Username -    "Yessica.Martinez.3726"

To the extent that the information described in Attachment A is within the possession, custody or control of Facebook, Inc., ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and

answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)     All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them to include EXIF data;

(d)     All Neoprints, including profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

2

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(o)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(p)     All email communications to include but not limited to; sent, received, deleted, drafted, and stored in the accounts listed above.

## III. The Search & Seizure of Evidence

The search of the data supplied by the Facebook pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the creation date of the account to present and to the seizure of:

a.  Communications, photographs, locations, postings, records, contacts, biographical information, and attachments tending to discuss or establish violations of Title 21, United Code, Section 952, and Title 21, United Code, Section 960(a).

b.  Communications, photographs, locations, postings, records, contacts,

1         biographical information, and attachments tending to identify the user of

2         the account and any co-conspirators involved in the activities in III(a)

3         above; and

4     c. Communications, photographs, locations, postings, records, contacts,

5         biographical information, and attachments that provide context to any

6         communications described above, such as electronic mail sent or received

7         in temporal proximity to any relevant electronic mail and any electronic

8         mail tending to identify users of the subject accounts;

9 **which are evidence of violations of Title 21, United Code, Section 952, 960, and**

10 **963.**

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Alexander Askey, being duly sworn, hereby state as follows:

## I. INTRODUCTION

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since October 2016. As a Special Agent with HSI, I have conducted numerous criminal investigations into transnational narcotics smuggling. I currently am assigned to a narcotics smuggling investigative group.

2. In connection with narcotics smuggling investigations in which I have participated, as well as upon information related to me by other individual(s), including conversations with other law enforcement officers, I am familiar with the methods used by individuals who engage in narcotics smuggling. Narcotics smuggling activities, particularly importation of narcotics from one country to another, are typically planned in advance. Individuals committing narcotics smuggling offenses communicate and coordinate with each other prior to, during, and after each smuggling event.

3. I make this affidavit in support of an application by the United States of America for a search warrant for Facebook, Inc., 1601 Willow Road, Menlo Park, California 94025, as described in Attachment A, to search the following accounts:

A) Facebook username "Yessica.Martinez.3726", Facebook Unique ID# 100001111873878 (**Martinez Lara's Facebook Account**);

from the registration date of the accounts to the present, for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United Code, Sections 952, 960, and 963.

4. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of

1

1   documents and computer records related to this investigation, communications

2   with others who have personal knowledge of the events and circumstances

3   described herein, and information gained through my training and experience.

4   Because this affidavit is submitted for the limited purpose of establishing probable

5   cause in support of the application for a search warrant, it does not set forth each

6   and every fact that I or others have learned during the course of this investigation.

7   **II.     BACKGROUND REGARDING INTERNET SERVICE PROVIDERS**

8                               **Facebook, Inc.**

9          5.     Facebook owns and operates a free-access social networking website

10   of the same name that can be accessed at http://www.facebook.com.  Facebook

11   allows its users to establish accounts with Facebook, and users can then use their

12   accounts to share written news, photographs, videos, and other information with

13   other Facebook users, and sometimes with the general public.

14          6.     Facebook asks users to provide basic contact and personal identifying

15   information to Facebook, either during the registration process or thereafter.  This

16   information may include the user's full name, birth date, gender, contact e-mail

17   addresses, Facebook passwords, Facebook security questions and answers (for

18   password retrieval), physical address (including city, state, and zip code),

19   telephone numbers, screen names, websites, and other personal identifiers.

20   Facebook also assigns a user identification number to each account.

21          7.     Facebook users may join one or more groups or networks to connect

22   and interact with other users who are members of the same group or network.  A

23   Facebook user can also connect directly with individual Facebook users by sending

24   each user a "Friend Request."  If the recipient of a "Friend Request" accepts the

25   request, then the two users will become "Friends" for purposes of Facebook and

26   can exchange communications or view information about each other.   Each

27   Facebook user's account includes a list of that user's "Friends" and a "News Feed,"

1  which highlights information about the user's "Friends," such as profile changes,

2  upcoming events, and birthdays.

3       8.     Facebook users can select different levels of privacy for the

4  communications and information associated with their Facebook accounts.  By

5  adjusting these privacy settings, a Facebook user can make information available

6  only to himself or herself, to particular Facebook users, or to anyone with access

7  to the Internet, including people who are not Facebook users.  A Facebook user

8  can also create "lists" of Facebook friends to facilitate the application of these

9  privacy settings.  Facebook accounts also include other account settings that users

10  can adjust to control, for example, the types of notifications they receive from

11  Facebook.

12       9.     Facebook users can create profiles that include photographs, lists of

13  personal interests, and other information.  Facebook users can also post "status"

14  updates about their whereabouts and actions, as well as links to videos,

15  photographs, articles, and other items available elsewhere on the Internet.

16  Facebook users can also post information about upcoming "events," such as social

17  occasions, by listing the event's time, location, host, and guest list.  In addition,

18  Facebook users can "check in" to particular locations or add their geographic

19  locations to their Facebook posts, thereby revealing their geographic locations at

20  particular dates and times.  A particular user's profile page also includes a "Wall,"

21  which is a space where the user and his or her "Friends" can post messages,

22  attachments, and links that will typically be visible to anyone who can view the

23  user's profile.

24       10.     Facebook has a Photos application, where users can upload an

25  unlimited number of albums and photos. Another feature of the Photos application

26  is the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When

27  a user is tagged in a photo or video, he or she receives a notification of the tag and

a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

11.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

12.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

13.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

14.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

15.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

4

16. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

17. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

18. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

19. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

20. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

21. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the

1   user ID or IP address on Facebook, including information about the type of action,
2   the date and time of the action, and the user ID and IP address associated with the
3   action. For example, if a user views a Facebook profile, that user's IP log would
4   reflect the fact that the user viewed the profile, and would show when and from
5   what IP address the user did so.

6        22.   Social networking providers like Facebook typically retain additional
7   information about their users' accounts, such as information about the length of
8   service (including start date), the types of service utilized, and the means and
9   source of any payments associated with the service (including any credit card or
10   bank account number). In some cases, Facebook users may communicate directly
11   with Facebook about issues relating to their accounts, such as technical problems,
12   billing inquiries, or complaints from other users. Social networking providers like
13   Facebook typically retain records about such communications, including records
14   of contacts between the user and the provider's support services, as well as records
15   of any actions taken by the provider or user as a result of the communications.

16        23.   Therefore, the computers of Facebook are likely to contain all the
17   material described above, including stored electronic communications and
18   information concerning subscribers and their use of Facebook, such as account
19   access information, transaction information, and other account information.

20        **III.**   **INVESTIGATION INTO YESSICA MARTINEZ LARA**
21        **BACKGROUND**

22        24. Homeland Security Investigations is investigating **Yessica Martinez**
23   **Lara** (hereinafter referred to as **Martinez Lara**), who attempted to smuggle
24   approximately 63.74 kilograms of methamphetamine, 23.04 kilograms of cocaine,
25   and 1.16 kilograms of heroin into the United States of America, through the Otay
26   Mesa, California, Port of Entry, on June 8, 2018.

27        25. On June 8, 2018, **Martinez Lara** entered the United States, from

6

1   Mexico, at the Otay Mesa, California Port of Entry. **Martinez Lara** was driving a

2   2007 Ford Focus bearing California license plates. She encountered a Customs and

3   Border Protection Officer (CBPO) at primary inspection. **Martinez Lara** told the

4   CBPO that she was traveling to La Jolla, California, and that she had nothing to

5   declare. The CBPO referred **Martinez Lara** and her vehicle to secondary

6   inspection.

7      26. During secondary inspection, a CBP Narcotics and Human Detection

8   canine alerted and indicated to the dashboard area inside of the vehicle. CBPO's

9   then discovered 115 packages inside the vehicle, contained in the dashboard, front

10  driver and passenger seat, rear seats, under the seats, rear driver's side fender, rear

11  passenger's side fender, and the front driver's side fender. Subsequent field-tests

12  of the 104 packages yielded positive results for the presence of methamphetamine,

13  cocaine, and heroin. The packages containing methamphetamine weighed

14  approximately 63.74 kilograms; the packages containing cocaine had an

15  approximate weight of 23.04 kilograms; and the package containing heroin had an

16  approximate weight of 1.14 kilograms.

17     27. CBP Officers arrested **Martinez Lara** for importation of narcotics into

18  the United States of America.

19     28. **Martinez Lara** was interviewed by Homeland Security Investigations

20  (HSI) Special Agents Alexander Askey and Nathaniel Sajo. **Martinez Lara** agreed

21  to make a post-Miranda statement. **Martinez Lara** told Special Agents that she

22  knew that illegal drugs were in her vehicle, and that this date (June 8, 2018) was

23  the first time that she had ever smuggled drugs into the United States. **Martinez**

24  **Lara** told Special Agents that her Ford Focus was registered to her, and that she

25  had been given instructions by a drug trafficking organization to "burn plates" by

26  crossing the border several times without drugs in her vehicle.

27     29. **Martinez Lara** told Special Agents that she crossed drugs because she

1  was in fear for her life. She stated that she does not have a lot of money, and made

2  a mistake by regularly accepting cash allowances from individuals who ultimately

3  wanted her to smuggle illegal drugs on behalf of a drug trafficking organization

4  (DTO). **Martinez Lara** went on to tell Special Agents that members of the

5  individual DTO threatened **Martinez Lara**, her mother, and her husband, Fabian

6  Martinez. Furthermore, Fabian was beaten and assaulted a couple of weeks prior

7  to **Martinez Lara**'s arrest. The assault occurred due to **Martinez Lara**'s prior

8  reluctance to smuggle drugs on behalf of the drug trafficking organization.

9  **INFORMATION GAINED REGARDING MARTINEZ LARA'S**

10  **FACEBOOK ACCOUNT**

11  30. On June 8, 2018, HSI Special Agent Alexander Askey conducted an

12  open-source media search for a Facebook linked with **Martinez Lara**. SA Askey

13  found an account listed under the profile name: Yessica **Martinez Lara**. The profile

14  pictures depicted a white, Hispanic female who appeared to closely resemble

15  **Martinez Lara**.

16  **ANALYSIS OF PUBLICALLY AVAILABLE SOCIAL MEDIA**

17  **ACCOUNTS**

18  31. On June 8, 2018, HSI Special Agent Alexander Askey conducted an

19  open-source media search for a Facebook linked with **Martinez Lara**. SA Askey

20  found an account listed under the profile name: "Yessica Martinez Lara". The

21  profile pictures depicted a white female who appeared to closely resemble

22  **Martinez Lara**. The profile page indicated that "Yessica Martinez Lara" resided in

23  Tijuana, Baja California. **Martinez Lara** had told Special Agent Askey, during the

24  custodial interview that she lived in Tijuana.

25  32.  Open source research into various social media accounts has resulted

26  in the following:

27

1       33.     A Facebook profile associated with Facebook ID# 100001111873878,

2 Facebook Username **"Yessica.Martinez.3726,"** and Facebook profile name

3 "Yessica Martinez Lara" (hereinafter **Martinez Lara's Facebook Account**) was

4 observed. Pictures posted by the user of this Facebook profile indicated that the user

5 of the page was **Martinez Lara.**

6       34.     On June 20, 2018, HSI Special Agents contacted **Martinez Lara's**

7 husband, Fabian, via telephone. Fabian told Special Agents that approximately one

8 month, individuals from their neighborhood in Tijuana learned that **Martinez Lara**

9 had the ability to lawfully cross the border from Mexico into the United States of

10 America. Fabian stated that these individuals belong to a DTO and had lived in their

11 neighborhood for a few years. Fabian was approached by members of this DTO,

12 and they asked him if his wife, **Martinez Lara**, would smuggle drugs into the

13 United States on behalf of their organization. The DTO offered to pay **Martinez**

14 **Lara**. When Fabian and **Martinez Lara** initially refused, members of the DTO

15 became persistent and aggressive with him. Eventually, four members of this DTO

16 physically assaulted Fabian by hitting him numerous times. After this assault

17 occurred, Fabian and **Martinez Lara** moved to a different neighborhood. The DTO

18 did not learn where they moved to, but continued to threaten **Martinez Lara**.

19 Fabian told HSI Special Agents that members of the DTO threatened **Martinez**

20 **Lara** by contacting her on Facebook. Fabian went on to say that **Martinez Lara's**

21 Facebook user profile name was "Yessica **Martinez Lara**".

22       35.     HSI Special Agents submitted preservation requests for all the above

23 Facebook to Facebook via Facebook's Law Enforcement Online Request portal.

24 Specifically, preservation requests were made on June 18, 2018, for **Martinez**

25 **Lara's Facebook Account**.

26 //

27 //

1

### IV.    Basis For Evidence Sought in Search Warrant

2      36.    Based on the above investigation, and my training, experience, and
3   consultation with other law officers regarding narcotics smuggling;

4      37.    Individuals coordinating narcotics smuggling activity will utilize cell
5   phones to solicit smugglers and drug mules, and to coordinate other logistical
6   activity regarding the movement of drugs from Mexico, across the border, and into
7   the United States.

8      38.    Individuals involved in narcotics smuggling often work in concert with
9   each other, and often communicate using cellular telephones to plan narcotics-
10  smuggling related activities.

11      39.    Individuals involved in narcotics smuggling use cellular telephones to
12  increase their mobility and coordinate illicit activity, through traditional audio
13  conversations, emails, social media, and other electronic applications. Records of
14  these communications are often stored on social media accounts and on email
15  accounts.

16      40.    Individuals involved in narcotics may utilize web or social media
17  searches related to smuggling recruitment targets, and searches related to methods
18  or techniques for narcotics smuggling. Individuals also utilize web or social media
19  to communicate with other individuals that they want to work for their drug
20  trafficking organizations.

21      41.    Individuals involved in narcotics smuggling often have electronic
22  documents and files, which were used to aide and facilitate the commission of the
23  crime. In many instances, these files can contain additional forensic and
24  transactional evidence linking the subject to the crime and/or identification of other
25  co-conspirators. These files may be saved within email or social media accounts.

26      42.    Based on the above, on the belief that **Martinez Lara** was
27  communicated with via Facebook regarding smuggling drugs, on the analysis of

publicly available Facebook information, and on the information voluntarily

provided by relatives of **Martinez Lara**, it is my belief that the Facebook accounts

referenced above and associated with Yessica **Martinez Lara**, will likely contain

communications both sent and received by the subjects involved in **Martinez**

**Lara**'s drug smuggling.

## V.   PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

43.    Federal agents and investigative support personnel are trained and

experienced in identifying communications relevant to the crimes under

investigation. The personnel of Facebook, Inc. (hereinafter "the internet service

providers" or "the ISPs") are not. It would be inappropriate and impractical for

federal agents to search the vast computer network of the ISPs for the relevant

accounts and then to analyze the contents of those accounts on the premises of the

ISPs. The impact on the ISPs' business would be disruptive and severe.

44.    Therefore, I request authority to seize all content, including electronic

mail and attachments, stored instant messages, stored voice messages,

photographs, and any other content from the Facebook and Instagram accounts, as

described in Attachment B. In order to accomplish the objective of the search

warrant with a minimum of interference with the business activities of the ISPs, to

protect the privacy of the ISPs' subscribers whose accounts are not authorized to

be searched, and to effectively pursue this investigation, Homeland Security

Investigations seeks authorization to allow the ISPs to make digital copies of the

entire contents of the accounts subject to seizure. The copies will be provided to

me or to any authorized federal agent. The copies will be imaged and the images

will then be analyzed to identify communications and other electronic records

subject to seizure pursuant to Attachment B. Relevant electronic records will be

copied to separate media. The original media will be sealed and maintained to

1    establish authenticity, if necessary.

2         45.    Analyzing the data to be provided by the ISPs may require special
3    technical skills, equipment, and software.  It may also be very time-consuming.
4    Searching by keywords, for example, often yields many thousands of "hits," each
5    of which must be reviewed in its context by the examiner to determine whether the
6    data is within the scope of the warrant.  Merely finding a relevant "hit" does not
7    end the review process.  Keyword searches do not capture misspelled words, reveal
8    the use of coded language, or account for slang.  Keyword searches are further
9    limited when electronic records are in or use foreign languages. Certain file formats
10   also do not lend themselves to keyword searches.  Keywords search text.  Many
11   common electronic mail, database and spreadsheet applications, which files may
12   have been attached to electronic mail, do not store data as searchable text.  Instead,
13   such data is saved in a proprietary non-text format. And, as the volume of storage
14   allotted by service providers increases, the time it takes to properly analyze
15   recovered data increases dramatically. The ISPs do not always organize the
16   electronic files they provide chronologically, which makes review even more time
17   consuming and may also require the examiner to review each page or record for
18   responsive material.

19        46.    Based on the foregoing, searching the recovered data for the
20   information subject to seizure pursuant to this warrant may require a range of data
21   analysis techniques and may take weeks or even months.   Keywords need to be
22   modified continuously based upon the results obtained and, depending on the
23   organization, format, and language of the records provided by the ISPs, examiners
24   may need to review each record to determine if it is responsive to Attachment B.
25   The personnel conducting the examination will complete the analysis within ninety
26   (90) days of receipt of the data from the service provider, absent further application
27   to this court.

47.   Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject accounts and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

48.   All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

### VII.   PRIOR ATTEMPTS TO OBTAIN DATA

49. The United States has not attempted to obtain this data by other means.

### VIII.   REQUEST FOR SEALING AND PRECLUSION OF NOTICE

50.   This case was originally charged, and later dismissed, by the San Diego County District Attorney's Office. This is now an ongoing investigation of which the target, particularly Yessica **Martinez Lara**, is unaware.  It is very likely, based upon the above, that evidence of the crimes under investigation exists on social media accounts subject to the control of the target.  There is reason to believe, based on the above, that premature disclosure of the existence of the warrant will result in destruction or tampering with that evidence and seriously jeopardize the success of the investigation.  Accordingly, it is requested that this warrant and its related materials be sealed until further order of the Court.  In addition, pursuant to Title 18, United States Code, Section 2705(b), it is requested that this Court order the electronic service provider to whom this warrant is directed not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant, until December 26, 2018, absent further order of the court.

### IX.   CONCLUSION

51.   Based on the foregoing, I believe there is probable cause to believe

1    items that constitute evidence, fruits, and instrumentalities of violations of federal

2    criminal law, namely, Title 21, United Code, Section 952, and Title 21, United

3    Code, Section 960(a), as described in Attachment B, will be found at the properties

4    to be searched, as provided in Attachment A.

5

6

7    _____
     Alexander Askey
8    Special Agent
     Homeland Security Investigations

9

10   Subscribed and sworn before me this _____ day of June, 2018

11

12

13   _____
     Hon. Jan M. Adler
14   United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

14

## **Attachment A**

Facebook, Inc. is an Internet Service Provider, with its primary computer information systems and other electronic communications and storage systems, records and data located at Facebook Inc., 1 Hacker Way, Menlo Park, CA 94025.

## ATTACHMENT B

**I.   Service of Warrant**

The officer executing the warrant shall permit Facebook, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.   "Facebook" Items subject to seizure**

All subscriber and/or user information, all electronic mail, images, GPS tags, text messages, comments, likes, histories, friends/followers lists included individuals following and individuals followed, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and usernames/vanity names for the period identified below:

**"Registration Date" to the present date of warrant execution:**

All records concerning the identity of the user with the Facebook Vanities and/or Facebook Unique Identification (ID) numbers usernames/vanity names, identified as:

1) Facebook Unique ID -   "100001111873878"

Facebook Username -    "Yessica.Martinez.3726"

To the extent that the information described in Attachment A is within the possession, custody or control of Facebook, Inc., ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)   All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and

1

answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them to include EXIF data;

(d)    All Neoprints, including profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    All IP logs, including all records of the IP addresses that logged into the account;

(h)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that the account is or was a "fan" of;

(j)    All past and present lists of friends created by the account;

(k)    All records of Facebook searches performed by the account;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(o)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(p)    All email communications to include but not limited to; sent, received, deleted, drafted, and stored in the accounts listed above.

### III. The Search & Seizure of Evidence

The search of the data supplied by the Facebook pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the creation date of the account to present and to the seizure of:

a.  Communications, photographs, locations, postings, records, contacts, biographical information, and attachments tending to discuss or establish violations of Title 21, United Code, Section 952, and Title 21, United Code, Section 960(a).

b.  Communications, photographs, locations, postings, records, contacts,

3

biographical information, and attachments tending to identify the user of the account and any co-conspirators involved in the activities in III(a) above; and

c. Communications, photographs, locations, postings, records, contacts, biographical information, and attachments that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the subject accounts;

**which are evidence of violations of Title 21, United Code, Section 952, 960, and 963.**

4